**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>ONE 2014 BLACK PORSCHE CAYMAN COUPE BEARING VEHICLE IDENTIFICATION NUMBER (VIN) WP0AB2A85EK191487;<br><br>THE REAL PROPERTY KNOWN AS 10212 DENTON DRIVE, DALLAS, TEXAS; AND<br><br>A TOTAL OF APPROXIMATELY $5,453,011.81 COMPRISED OF<br><br>$2,845,428.41 PREVIOUSLY DUE AND PAYABLE BY THE UNITED STATES MINT TO AMERICA NAHA, INC.;<br><br>$2,388,091.18 PREVIOUSLY DUE AND PAYABLE BY THE UNITED STATES MINT TO WEALTHY MAX LIMITED; AND<br><br>$219,492.22 PREVIOUSLY DUE AND PAYABLE BY THE UNITED STATES MINT TO XRACER SPORTS CO. LTD.,<br><br>Defendants *in Rem*. | Civil Action No.: 15-2036 (JLL)<br><br>**OPINION** |

**LINARES**, District Judge.

This matter comes before the Court by way of America Naha, Inc., Kei Yi Loung, also

known as Kenneth E. ("Kenny") Loung, Chien Chieng Loung, Harry Kenneth Loung, Lisa Marie

Loung, and Mary Robin Loung (collectively "Moving Claimants")'s Motion to Dismiss the Amended Verified Complaint for Forfeiture *In Rem* ("Amended Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6) and, in the alternative, to sever the claims against Moving Claimants' property pursuant to Federal Rule of Civil Procedure 21. (ECF No. 41.) The Court has considered the parties' submissions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court denies Moving Claimants' Motion to Dismiss under Rule 12(b)(3), but *sua sponte* transfers the case to the Eastern District of Pennsylvania.

## BACKGROUND[1]

The Government commenced this action on March 20, 2015, by filing a two-count complaint for civil forfeiture of Moving Claimants' property, in connection with an alleged conspiracy to defraud the United States Mint with counterfeit currency. (*See* ECF No. 1.) The Government filed an amended complaint on August 10, 2015. (ECF No. 35 ("Am. Compl.").)

The Government alleges that the Moving Claimants submitted counterfeit mutilated coins to the United States Mint, in connection with the Mint's Mutilated Coin Program ("Program"). (Am. Compl. ¶¶ 19, 40.) According to the Amended Complaint, under the Program, the Mint accepts, melts down, and converts into new currency "chipped, fused, discolored, burned, or distorted and not machine countable" coins, and then redeems the face value of the mutilated coins. (*Id.* ¶¶ 19-27.) The Program operates at a loss, the Government alleges, because the metallic content in each mutilated coin is worth less than each coin's face value. (*Id.*) Redeemers send

---

[1] This background is derived from the Amended Complaint, which the Court must accept as true at this stage of the proceedings. *See Alston v. Countrywide Fin. Corp.*, 585 F.3d 753, 758 (3d Cir. 2009).

small shipments of mutilated coins to the United States Mint in Philadelphia, and larger shipments directly to one of the Mint's two foundries, PMX Industries Incorporated ("PMX") in Iowa or Olin Brass in Illinois, where the coins are melted down. (*Id.* ¶¶ 22-23.)   Upon completion of the melting process for large shipments, the Mint either tenders a United States Treasury Check to the redeemer, or wires a payment to the redeemer's bank account, which is processed through an Automated Clearing House ("ACH") in East Rutherford, New Jersey. (*Id.* ¶ 27.)

The Amended Complaint notes that since 1999, the Mint has experienced a sharp increase in shipments of mutilated coins from China, specifically from Chinese scrap metal importers that purport to collect mutilated coins from old automobiles. (Am. Compl. ¶¶ 28-39.) The Amended Complaint details ongoing government analysis from 2009 that shows that many of the Chinese shipments are fraudulent. (*Id.*) Specifically, the analysis points to a lack of a concomitant increase in mutilated coin shipments from India, the largest importer of American scrap metal; analysis of the mutilated coins, which showed mechanical and uniform deformation; and the Mint's receiving of more mutilated half dollars in the past ten years than the Mint had ever manufactured.[2] (*Id.* ¶¶ 32-33, 36-37.) The Amended Complaint also speculates that the Chinese shipments almost never contained pennies and nickels because of the relative expense to reverse engineer those coins vis-à-vis dimes, quarters, and half dollars. (*See id.* ¶¶ 34-35, 38-39.)

The Government alleges that beginning the week of June 23, 2014, the Moving Claimants sent a large shipment of counterfeited mutilated coins, which testing showed to contain elements "not found in genuine United States coins," "insufficient amounts of certain types of metals

---

[2] The Amended Complaint also notes that, for the Chinese importers' explanation of mutilated coins coming from old cars to be true, every car ever shipped to China for scrap metal would have to contain $900 in mutilated coins. (Am. Compl. ¶ 31.)

typically found in United States coins," and mutilated "in a uniform manner," to PMX for melting. (Am. Compl. ¶¶ 40-42.) Despite the evidence of fraud, the Government contends that it still owed the Moving Claimants $5,453,011.81, and accordingly acquired a seizure warrant for those funds on September 4, 2014 from the Honorable Cathy L. Waldor in the District of New Jersey. (*Id.* ¶¶ 43-44.) Because the ACH in New Jersey processed the funds "as on prior occasions," the United States Attorney's Office for the District of New Jersey intercepted the funds prior to the wire transfer, in accordance with the seizure warrant. (*Id.* ¶ 44.)

The Government now seeks to seize $5,453,011.81 in funds, as well as two pieces of property in connection with the Moving Claimants' ongoing scheme to defraud the United States Mint. (Am. Compl. ¶¶ 45-65.) First, it seeks Claimant Loung's 10212 Denton Drive Property in Dallas, Texas ("Texas Property"), which is a warehouse facility purchased by one of Loung's companies, Phoenix 10212 LLC ("Phoenix"), in January 2009 for $1,072,500. (*Id.* ¶ 45.) Second, the Government seeks Claimant Loung's 2014 Black Porsche Cayman Coupe ("Porsche"), which Loung purchased in October 2013 for $81,000. (*Id.* ¶¶ 55, 57.) The Government alleges that Loung previously received $6.4 million in payments from the Mint through the Program, in three separate transactions, each wired from the ACH in New Jersey, which included: (1) $1,517,794.41 on February 13, 2013, (2) $3,230,389.26 on October 7, 2013, and $1,692,898.01 on February 27, 2014. (Am. Compl. ¶ 49.) After receiving the first payment, the Government contends that, one week later, Loung wired $744,956 to Phoenix's account and had Phoenix pay off his mortgage for the Texas Property in full. (*Id.* ¶¶ 45-54.) In a similar fashion, the Government alleges that after Loung received the second payment, he purchased the Porsche nine days later. (*Id.* ¶¶ 55-57.)

On August 27, 2015, Moving Claimants filed the instant Motion to Dismiss the Complaint.

4

(ECF No. 41 ("Mov. Br.").)  On September 25, 2015, the Government filed opposition.  (ECF No. 44 ("Opp. Br.").)  Moving Claimants filed a reply on October 13, 2013.  (ECF No. 59 ("Rep. Br.").)  The motion is now ripe for resolution.

## LEGAL STANDARDS

### A.  Motion to Dismiss for Improper Venue

Federal Rule of Civil Procedure 12(b)(3) permits a party to file a motion to dismiss for improper venue in response to a pleading.  Fed. R. Civ. P. 12(b)(3).  A party moving for dismissal bears the burden of showing that venue does not lie.  *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724-25 (3d Cir. 1982).  For *in rem* civil forfeiture proceedings, the Third Circuit has held that 28 U.S.C. § 1355(b) governs venue.  *See Contents of Account Number 03001288 v. United States*, 344 F.3d 399, 403 (3d Cir. 2003).  Section 1355(b) provides, in pertinent part:

> A forfeiture action or proceeding may be brought in--
> (A) the district court for the district in which any of the acts or omissions giving rise to the forfeiture occurred, or
> (B) any other district where venue for the forfeiture action or proceeding is specifically provided for in section 1395 of this title or any other statute.

28 U.S.C. § 1355(b)(1).

### B.  Motion to Transfer Venue

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).  Motions to transfer can be brought by the plaintiff, the defendant, or made *sua sponte*.  *See Amica Mut. Ins. Co. v. Fogel*, 656 F.3d 167, 171 (3d Cir. 2011); *Keating Fibre Int'l,*

*Inc. v. Weyerhaeuser Co.*, 416 F. Supp. 2d 1048, 1051 (E.D. Pa. 2006). However, transferee courts must apply the choice-of-law analysis of the state of the transferor court. *Lafferty v. St. Riel*, 495 F.3d 72, 76-77 (3d Cir. 2007) (citing *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964)).

The primary purpose of Section 1404(a) is "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616. Courts should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interest of justice be better served by transfer to a different forum." *Murphy v. Zajac*, No. 13–cv–04981, 2014 WL 3845830, at *3 (D.N.J. June 4, 2010) (quoting *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995)). Relevant factors include the private and public interest factors, which the Third Circuit has stated as:

> The private interests have included: plaintiff's forum preference as manifested in the original choice; the defendant's preference; whether the claim arose elsewhere; the convenience of the parties as indicated by their relative physical and financial condition; the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).
>
> The public interests have included: the enforceability of the judgment; practical considerations that could make the trial easy, expeditious, or inexpensive; the relative administrative difficulty in the two fora resulting from court congestion; the local interest in deciding local controversies at home; the public policies of the fora; and the familiarity of the trial judge with the applicable state law in diversity cases.

*Jumara*, 55 F.3d at 879-80.

**C. Motion to Dismiss for Failure to State a Claim**

To withstand a motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

6

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

To determine the sufficiency of a complaint under *Twombly* and *Iqbal* in the Third Circuit, the court must take three steps: first, the court must take note of the elements a plaintiff must plead to state a claim; second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *See Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted).  "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of the public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010).

## ANALYSIS

### A.    Venue In The District Of New Jersey Under 28 U.S.C. § 1355

Moving Claimants argue that venue is improper in the District of New Jersey, pursuant to Federal Rule of Civil Procedure 12(b)(3).  (Mov. Br. at 10.)  While Moving Claimants do not dispute this Court's subject-matter and personal jurisdiction under Section 1355, they argue that

the Government has failed to establish by a preponderance of the evidence that venue is proper based on "any of the acts or omissions giving rise to the forfeiture" occurring in New Jersey. 28 U.S.C. § 1355(b)(1)(A). (*Id.*) Specifically, Moving Claimants maintain that the Government's Amended Complaint fails to allege which of the Moving Claimants' actions or omissions give rise to venue in New Jersey, and how Moving Claimants' actions gave rise to the forfeiture. (Rep. Br. at 2-5.) Additionally, Moving Claimants raise policy concerns with a finding of proper venue in the District of New Jersey: the underlying purpose of venue to protect defendants from inconvenient trials would be contravened, New Jersey would be converted into a "super venue" for civil forfeiture actions because of the ACH's prevalence in government transactions. (Mov. Br. at 11-13.)

In response, the Government contends that it has proven proper venue in the District of New Jersey. The Government argues that Section 1355's broad language justifies the District of New Jersey's venue, specifically through Congress's use of the words "any actions or omissions." (Opp. Br. at 12-13. (quoting 28 U.S.C. § 1355(b)(1)(A)).) Utilizing this broad language, the Government maintains that Moving Claimants caused the ACH to fraudulently wire money from New Jersey to the Moving Claimants' bank accounts. (*Id.* at 14-17.) Because the underlying fraudulent activity gave rise to the wire transfer, the Government concludes that venue must be proper in the District of New Jersey. (*Id.*) Moreover, the Government contends that courts do not require it to plead its case in its entirety in its Amended Complaint, especially for civil forfeiture actions. (*Id.* at 23-24.)

The Court agrees with the Government that venue is proper in the District of New Jersey due to the Third Circuit's broad reading of Section 1355(b). In accordance with Section 1355(b),

this Court looks to the Complaint for "any actions or omissions giving rise to the forfeiture" occurring in New Jersey. 28 U.S.C. § 1355(b)(1)(A). At the motion to dismiss stage, courts "accept the allegations in the complaint as true and construe those facts in the light most favorable to the [plaintiffs]." *Kiriakidis v. Borough of Vintondale*, 609 F. App'x 713, 715 (3d Cir. 2015) (citing *Phillips v. Cnty. of Alleghany*, 515 F.3d 224, 233 (3d Cir. 2008)).

Taking the Amended Complaint as true and viewed in a light most favorable to the Government, this Court cannot say that no actions occurred in New Jersey that gave rise to the forfeiture. The Amended Complaint alleges that the June 23, 2014, shipment to PMX was counterfeit. (Am. Compl. ¶ 40-42.) As a result of the counterfeited mutilated coins, the United States Mint directed the ACH in New Jersey to wire more than $1.5 million in illegally obtained funds to the Moving Claimants' bank accounts. (*Id.* ¶¶ 43-44.) While the ACH's previous wire transfers to the Moving Claimants are not explicitly alleged, the Amended Complaint does note that the Mint directed the ACH to wire funds "as on prior occasions." (*Id.* ¶ 44.) A federal Magistrate Judge for the District of New Jersey signed the seizure warrant, and the United States Attorney in New Jersey intercepted the funds before the ACH wired the money. While the link to New Jersey in this case is certainly tenuous, Section 1355's plain language requires only that *any* act giving rise to the forfeiture confers venue. Accordingly, the Court finds that venue is proper in the District of New Jersey.

Moving Claimants proffer three principal counterarguments to the Government's choice of venue in the District of New Jersey. The Court finds none of those arguments persuasive in light of Section 1355's broad jurisdictional mandate and the Government's sufficiently pled complaint, and discusses each in turn.

First, Moving Claimants argue that the Government has not pled that any of the Moving Claimants' actions took place in New Jersey. Instead, Moving Claimants contend that they acted in states such as Texas, Iowa, and Pennsylvania because of their property's physical presence in those states. While such is true, that argument overlooks the Congressional intent to remove territorial notions of jurisdiction from *in rem* forfeiture proceedings. Congress amended Section 1355 in 1992 to its current form, most notably adding subsection b, which allows district courts to exercise *in rem* jurisdiction over property entirely foreign to the district, so long as "any of the acts or omissions giving rise to the forfeiture occurred" in the district. *See* 28 U.S.C. § 1355(b). Motivating Congress's amendments was the outdated notion of territorial jurisdiction for *in rem* cases and the jurisdictional hurdles prosecutors faced in bringing those actions. *See* 137 Cong. Rec. S16640-01 (1991) (noting that territorial notions of jurisdiction have largely been eliminated following *International Shoe*). Thus, Congress intended to eliminate territorial notions of venue, personal jurisdiction, and subject-matter jurisdiction by divorcing a claimant's location from the analysis. *See id.* (noting that the amendments are "a great improvement over current law which requires the government to file separate forfeiture actions in each district in which the subject property is found, even if all of the property represents the proceeds of criminal activity committed in the same place.").

Indeed, the Third Circuit recognized this liberal intention behind Section 1355 in *Contents of Account Number 03001288 v. United States*, when it held that Section 1355 not only applies to venue, but also to subject-matter jurisdiction. 344 F.3d at 403. The Third Circuit subsequently affirmed the District Court's finding of venue in the District of New Jersey based on proceeds from drug transactions that occurred in New Jersey and funded overseas bank accounts. *Id.* at 407.

10

Significantly, the record disclosed no information that the overseas defendants had ever stepped foot in New Jersey, nor had they committed any actions in New Jersey. *Id.* at 401-02. Rather, the foreign defendants, in connection with a drug conspiracy, caused drug transactions to take place in New Jersey, which the Third Circuit found sufficient to justify the District of New Jersey's venue and *in rem* jurisdiction over the foreign bank accounts, in light of Section 1355's broad language. *See id.* at 401-03.

Similarly, in *United States v. $169,000 Funds Seized From Sentaida, Inc.*, the court determined that venue was proper in the District of Puerto Rico based on transactions occurring in Puerto Rico that funded a foreign bank account. No. 11-1848, 2011 WL 5877012, at *2 (D.P.R. Nov. 8, 2011) (noting that the transactions are "certainly sufficient under section 1355(b), which requires only that 'any' of the acts giving rise to the forfeiture occur in the district in which the action is brought"). Other district courts have come to similar conclusions regarding Section 1355's broad jurisdictional grant. *See, e.g., United States v. All Funds in Account in Banco Espanol de Credito, Spain*, 295 F.3d 23, 26-27 (D.C. Cir. 2002) (noting that "Congress intended the District Court for the District of Columbia, among others, to have jurisdiction to order the forfeiture of property located in foreign countries"); *United States v. One Oil Painting Entitled Feme en Blanc by Pablo Picasso*, 362 F. Supp. 2d 1175, 1186 (C.D. Cal. 2005) (finding venue is proper in California over a painting located in Illinois because the painting had previously been transported through California). Thus, viewed in the light of its legislative intent and subsequent broad interpretation in the Third Circuit, Moving Claimants' contention that none of their actions took place in New Jersey is misplaced.

Second, Moving Claimants argue that New Jersey will become a "super venue" for civil forfeiture cases because of ACH, as an arm of the Federal Reserve, processes many of the United States' monetary transactions.   For many of the reasons already stated, this argument is unpersuasive.   Congress clearly intended to make venue selection easier for plaintiffs for civil forfeiture actions—disqualifying a venue based solely on its alleged success as a "super venue" defies this Congressional intent.   Moreover, Moving Claimants cite to no case law in support of their proposition that "super venue" status is inherently unfair or inconvenient, nor can they prove that the ACH's prevalence is likely to lead to more litigation.   The argument also overlooks the already-existing procedural safeguard in place to protect defendants from inconvenient venues, namely 28 U.S.C. § 1404(a), which "protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen*, 376 U.S. at 616.

Finally, Moving Claimants argue that the forfeiture is unrelated to the alleged fraud.   As previously stated, at the motion to dismiss stage, courts accept factual allegations in the complaint as true and in the light most favorable to the plaintiffs. *Kiriakidis v. Borough of Vintondale*, 609 F. App'x 713, 715 (3d Cir. 2015).   Giving all favorable inferences to the Government, this Court can reasonably infer from the Amended Complaint that Moving Claimants perpetuated a scheme to defraud the United States Mint, the proceeds from which Claimant Loung purchased the Texas Property and Porsche.

The Amended Complaint alleges that the Moving Claimants were involved in a systematic scheme to defraud the Mint for as much as ten years for over $47 million. (Am. Compl. ¶ 18.)   It lays out convincing evidence that rationally leads to the conclusion that most, if not all, mutilated coin imports from China were counterfeit for the past fifteen years, including government-led

12

chemical and statistical analyses, as well as on-site inspections of scrap metal yards. (*Id.* ¶¶ 28-39.) Likewise, the Amended Complaint sufficiently alleges that Loung used the government payments to purchase the Texas Property and Porsche, noting the speed in which Loung purchased both upon acquiring the funds. (*See id.* ¶¶ 45-59.) And, as the Government correctly points out, it is not required to plead its entire case in its Amended Complaint for forfeiture cases. *See, e.g.*, *United States v. Aguilar*, 792 F.3d 1101, 1109 (9th Cir. 2015) (noting that the court has "consistently instructed district courts to wait until trial to adjudicate arguments that a portion of the property that the government claims is not subject to forfeiture," and that "the government need not show that all of the claimed property is tainted to satisfy [the pleading standard]."). While the Amended Complaint admittedly does not directly link Loung's Texas Property and Porsche to the alleged fraudulent activity, nothing at this stage suggests that the Government cannot prove this link after discovery.[3] Thus, giving all favorable inferences to the Government, this Court is satisfied that the Amended Complaint sufficiently relates the forfeiture to the alleged fraud, in light of the broader scheme to defraud.

Thus, in light of Section 1355's broad language as intended by Congress and interpreted by the Third Circuit, as well as the Amended Complaint's sufficiently pled scheme to defraud, venue lies in the District of New Jersey, pursuant to Section 1355(b).

---

[3] Moving Claimants' contention that no evidence exists because the Government did not test any of Moving Claimants' mutilated coins prior to their melting is premature. Such factual contentions are best left for discovery and summary judgment motions. *See Fowler v. UPMC Shadyside*, 578 F.3d 208, 213 (3d Cir. 2009) ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." (quoting *Twombly,* 550 U.S. at 556 (internal quotations omitted))).

**B.      In The Interests Of Justice, The Court *Sua Sponte* Transfers This Matter to the Eastern District of Pennsylvania.**

Although venue is proper in the District of New Jersey, this Court believes venue is most convenient for both parties in the Eastern District of Pennsylvania.  While neither of the parties filed a motion for transfer, this Court *sua sponte* transfers the case to the Eastern District of Pennsylvania, pursuant to its authority under 28 U.S.C. § 1404(a).  *Amica Mut. Ins. Co.*, 656 F.3d at 171.  In order for this court to determine whether the Eastern District of Pennsylvania is an appropriate venue, it must determine if venue is proper in Pennsylvania, and if venue is convenient for both parties in Pennsylvania.  *Jumara*, 55 F.3d at 878-79.

Venue analysis begins with a determination of the appropriate fora.  As discussed above, New Jersey is an appropriate forum for this litigation.  *See* Section A, *supra*.  Relevant to this analysis, Pennsylvania is also an appropriate forum because acts occurred in the Eastern District of Pennsylvania that gave rise to the forfeiture.  *See* 28 U.S.C. § 1355(b)(1)(A).  Specifically, the United States Mint in Philadelphia ordered the wire transfer to Moving Claimants' bank accounts.  At all times, Moving Claimants dealt with the United States Mint and operated directly through a Mint-operated program.  The Amended Complaint details several monetary transactions between the Mint and Moving Claimants, as well as Moving Claimants' communications, directed at Pennsylvania, about how the Mint should wire the money to Moving Claimants' accounts.  (Am. Compl. ¶¶ 49-50, 54, 63, 65.)  Indeed, Pennsylvania seems to be the "focal point of this litigation," *Thorlabs, Inc. v. Townsend Commc'ns, L.L.C.*, No. 03-4550, 2004 WL 1630488, at *3 (D.N.J. June 30, 2004) (transferring litigation to Texas because of a cumulative finding that Texas was the focal point of the litigation), and the Eastern District of Pennsylvania is, thus, a proper venue.[4]

---

[4] This Court recognizes that other fora exist, including Texas and Iowa, in which proper venue lies.  However, for the

This Court must next consider whether the Eastern District of Pennsylvania is the most convenient forum for the parties. *See Jumara*, 55 F.3d at 879. Courts must consider the private- and public-interest factors, but are not limited to only those factors. *See Windt v. Qwest Commc'ns Int'l., Inc.*, 529 F.3d 183, 189-90 (3d Cir. 2008) (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)); *Jumara*, 55 F.3d at 879. Applying the private- and public-interest factors, the Eastern District of Pennsylvania is the most convenient forum for all the parties.

The United States Mint is located in Philadelphia in the Eastern District of Pennsylvania. As such, many of the parties' witnesses and evidence will come from the Mint because this litigation concerns the Mint's Mutilated Coin Program. There is no indication that Moving Claimants would be seriously financially harmed by litigating in Pennsylvania.[5] The underlying fraud action bears substantial connection to the Philadelphia Mint. The trial will be easier and more efficient in Pennsylvania, as most of the witnesses and evidence will likely come from the Mint itself. Likewise, the Eastern District of Pennsylvania, no doubt, has more experience hearing cases about the Mint and has an adjudicatory interest in such matters. *See, e.g.*, *Langbord v. U.S. Dep't of the Treasury*, 888 F. Supp. 2d 606, 608-23 (E.D. Pa. 2012) (forfeiture and embezzlement at the Mint), *vacated*, 783 F.3d 441 (3d Cir. 2015); *Fuller v. Geithner*, No. 09-2216, 2011 WL 710222, at *1 (Feb. 28, 2011) (employee discrimination at the Mint); *Greene v. Rubin*, No. CIV.A. 95–2415, 1997 WL 535893, at *1 (E.D. Pa. July 30, 1997) (defamation at the Mint). Choice-of-law issues will not arise because the cause of action is based in federal law. Although the Government's initial choice of forum deserves deference, *see Windt*, 529 F.3d at 190, this Court

reasons that follow, this Court believes that Pennsylvania is the most convenient venue for all the parties.

[5] To the contrary, the Amended Complaint details more than $40 million of cash wired to Moving Claimants, irrespective of the June 23, 2014, wire transfer. (Am. Compl. ¶¶ 18, 49-50, 63, 65.)

is satisfied that such deference is overcome, particularly in light of the other convenience factors, and because Third Circuit procedural law still governs in the Eastern District of Pennsylvania. *See, e.g., Various Plaintiffs v. Various Defendants (Oil Field Cases)*, 673 F. Supp. 2d 358, 362 (E.D. Pa. 2009) ("[T]he Court will apply federal procedural law, as interpreted by the Third Circuit, the circuit where the transferee court sits.").

Thus, after a careful review of the private- and public-interest factors, this Court holds that the Eastern District of Pennsylvania is the most convenient forum for this litigation. Because the Court finds that venue in the Eastern District of Pennsylvania is more appropriate, the Court declines to rule on the sufficiency of the Amended Complaint under Rule 12(b)(6) or whether severance is warranted.

## **CONCLUSION**

For the reasons above, the Court denies Moving Claimants' motion to dismiss for improper venue and *sua sponte* transfers this case to the Eastern District of Pennsylvania. An appropriate Order accompanies this Opinion.

DATED: October 10, 2015

_____
JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

16